CASE 35—PETITION EQUITY—JULY 4.

# Louisville & Oldham Turnpike Road Company vs. Ballard, &c.

2 me 165
e112 264

2me165
115 458
2me165
116 415
2me165
116 415
2me 165
e127 703

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The first section of the act of March, 1856, entitled "An act for the benefit of the Louisville and Oldham turnpike road company," authorizes the company to borrow money, and to execute mortgages to secure its payment; the second section gives

the directors power to sell the road, right of way, &c., and apply the proceeds to the payment of debts; the third section authorizes the chancellor to sell the road, &c., upon the application of a creditor; and the fourth section substitutes the purchaser to the rights and powers of the company. *Held*—That the act relates to but one subject, and that is fully expressed in the title, and that it is not in conflict with article 2, section 37, of the constitution.

2. Although the act *supra* was repudiated by the company and its stockholders, and the act of incorporation reserved no power to the legislature to alter or modify its provisions, the former is not a law impairing the obligation of contracts. The legislature could constitutionally confer upon the chancellor the power to sell " the road, right of way, franchises, and all property, real and personal," of the company, upon the application of " any creditor of the company whose debt may be due and unsatisfied," and direct the proceeds to be divided *pro rata* among all the creditors.

3. The power of the legislature to subject the property of a corporation to the payment of its debts is undeniable.

4. In an action to subject to sale a turnpike road, with its franchises, &c., for the payment of the debts of the company, if the stockholders be necessary parties, where they are numerous and it is impracticable to bring them all before the court, one or more may be allowed to defend for all. (*Civil Code, sec.* 37.)

SPEED & POPE, for appellant, cited *Civil Code, sec.* 786 ; 1 *Law Register*, 612 ; 7 *Porter, Ind. Rep.*, 682 ; *Ib.*, 59.

PIRTLE & BALLARD, for appellees, cited 16 *Peters*, 25–59 ; 4 *Mon.*, 94 ; 6 *Ib.*, 592 ; 11 *Peters*, 434 ; 6 *Howard*, 542 ; *Ib.*, 507 ; *Smith on Statutes, p.* 414 ; 11 *N. H.*, 19 ; 7 *Ib.*, 35 ; 8 *Ib.*, 398 ; 21 *Pick.*, 542 ; *Civil Code, secs.* 37, 120, 123, 796 ; 1 *Bibb*, 149 ; 4 *Peters*, 514 ; 11 *Ib.*, 420 ; 6 *How.*, 507 ; *Hart vs. Providence R. R. Co.*, 4 *Cush., Mass. R.*

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

The Louisville and Oldham turnpike road company was incorporated by an act of the legislature, approved February 26, 1849. (*Sess. Acts* 1848–9, *p.* 314.) The act confers upon the company the usual corporate powers and privileges, and subjects it to the duties and responsibilities usually incident to such corporations. It reserves to the legislature no power to alter or modify its provisions.

Under this charter the road was constructed. In March, 1856, the legislature passed an act, entitled " An act for the benefit of the Louisville and Oldham turnpike road company," the first section of which authorizes the company to borrow money upon the credit of the corporation, to execute such evidences of indebtedness as may be deemed proper, and to mort-

gage the property, income, franchises, rights, and credits of the company as security for loans, &c., such mortgage to inure alike, *pro rata*, to the benefit of all creditors existing at the time it may be executed.

By the second section, any board of directors thereafter elected are authorized to sell at public auction the road, right of way, franchises, and all property, real and personal, owned by the company, the proceeds of such sale to be appropriated to the payment of the debts of the company, and the remainder divided among the stockholders *pro rata*.

The two remaining sections are as follows:

" § 3. That the chancellor of the Louisville chancery court shall have power to sell the same upon the application of any creditor of the company whose debt may be due and unsatisfied, the proceeds to be divided, first, *pro rata*, among the creditors of the company, and the remainder, *pro rata*, amongst the stockholders.

" § 4. That any purchaser or purchasers of the same shall be substituted to the rights and powers of the company, and may organize themselves in such manner as they may deem proper into an incorporated company, under the style of the Louisville and Oldham turnpike road company, and shall thereafter possess all the powers and privileges of the existing company."

This act was repudiated by the company and its stockholders.

The appellees, Ballard and Ormsby, having obtained several judgments against the company, instituted this action in the Louisville chancery court, in which they seek, *first*, to subject the receipts and income of the road to the payment of their debts; and, *secondly*, a sale of the road and its franchises, and an appropriation of the proceeds, according to the provisions of the act referred to.

In the progress of the case appropriate orders were made, by which the tolls and receipts of the road were applied to the satisfaction of the plaintiffs' demands. In June, 1858, the plaintiffs filed a supplemental petition, in which they allege that the creditors of the company are numerous, and the plain-

tiffs ask to be allowed to prosecute the action as well for their own benefit as for that of the other creditors; they say that the company is insolvent, and has no property which is subject to execution; that its road is greatly out of repair, and that its income from tolls, which are its only source of income, will be insufficient to put and keep it in repair; that the company, with its present means, will be unable to pay but a small portion of its debts; that there is imminent danger that the toll gates on the road will be, by some legal proceeding, thrown open.

These allegations were not controverted by the defendant, and in September following the chancellor rendered a judgment, directing a sale of the road, right of way, franchises, and all the property, real and personal, of the company, for the payment of its debts, the proceeds of the sale to be subject to any further orders of the court. From that judgment the company has appealed.

On the part of the appellant it is insisted that the act under which the judgment was rendered is invalid, being in conflict with that provision of the constitution of Kentucky which declares that " no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title."

This point may be briefly disposed of.

The Louisville and Oldham turnpike road company is the *subject* of the act under consideration. The several sections and provisions of the act relate exclusively to the corporation and its interests, and this *subject* is clearly and fully comprehended in the title — " An act for the benefit of the Louisville and Oldham turnpike road company." The first section authorizes the company to borrow money and to execute mortgages to secure its payment; the second section gives the directors power to sell the road, right of way, &c., and to apply the proceeds to the payment of debts; the third section authorizes the chancellor to sell the road, &c., upon the application of a creditor; and the fourth section substitutes the purchaser to the rights and powers of the company. Such is the subject, and such are the objects of the act. Whether all of

Louisville and Oldham Turnpike Road Company vs. Ballard, &c.

its provisions, or whether any of them, will operate *beneficially* to the company, is but matter of opinion. There is certainly nothing in either of the four sections inconsistent with the presumption that the act was intended *for the benefit* of the company.

Any construction which would bring this act within the constitutional restriction referred to, would expose almost every legislative act containing more than one section to the same objection. A more liberal construction of this clause of the constitution will be not only more consistent with the objects intended to be accomplished by it, but will be found necessary in the practical business of legislation.

2. It is, in the second place, contended that the act in question is invalid, because it divests the stockholders and members of the corporation of the rights with which they were invested by the original charter, and that it must, therefore, be pronounced a law impairing the obligation of contracts.

It is well settled that the charters of private civil corporations, such as banks, insurance companies, railroad and turnpike companies, are *contracts*, within the meaning of, and protected by, that provision of the constitution which prohibits the States from passing any law impairing the obligation of contracts; and, therefore, without an express reservation of power, the legislature cannot divest the private rights, which are secured by the charter, by a repeal or modification of it, except by the consent of the company.

But these rights of property in a chartered corporation are no more sacred than the same rights would be in the person of the citizen. A patent from the Commonwealth to an individual for land is a contract of as high a nature, and confers rights as much beyond the reach of the legislature, as a grant of property or of chartered privileges to a corporation. And yet no one would doubt the power of the legislature to subject the lands of the patentee to the payment of his debts. The power of the legislature to subject the property of a corporation to the payment of its debts is equally undeniable. The exercise of such power would not, in either case, be an impairment of the obligation of the contract between the State on

the one hand, and the individual or the corporation on the other.

The act of 1856 cannot be regarded as anything more than an exercise of this undoubted legislative authority. The act does not, in terms or in effect, repeal or modify the charter of the company ; nor does it forfeit the charter; nor does it subject the private property of the individual stockholders to the payment of the debts of the corporation. It confers upon the chancellor the power to sell "the road, right of way, franchises, and all property, real and personal," upon the application of " any creditor of the company whose debt may be due and unsatisfied," the proceeds to be divided *pro rata* among all the creditors. The "road, right of way, and franchises," thus subjected to sale, are the property of the corporation, as much so as the tolls when collected, or any other property, real or personal, owned by the company. They are, by the terms of the charter, expressly granted to the *corporation*, and not to the individuals who may own the stock in the corporation. The stockholders have the same interest in the "road, right of way, and franchises," owned by the corporation, that they have in the tolls or income, or any other property of the corporation. It is the failure to distinguish between that which constitutes the property of the ideal being called the corporation, and that which belongs to the persons who are the stockholders, that underlies all the fallacy of the argument by which the appellant attempts to prove that the act in question is an invasion and spoliation of private individual rights.

But it is said that a sale of the road, &c., will render the stock valueless. So it may. And the same consequence might have resulted from the construction of a railroad, under the authority of the legislature, along the line of and near to the turnpike. There have been numerous cases of this kind ; and yet in none of them has it been supposed that corporate privileges or individual rights were invaded, or any contract violated on the part of the State. The subjection of any considerable portion of the property of a corporation to the payment of its debts might, and generally would, have the effect to render the stock worthless, or to greatly impair its value ; but

the right of the creditor to his legal remedies would not be at all affected by such incidental injury to the stockholder.

Various other grounds are relied on for reversal; but as they relate chiefly to the orders of court, and proceedings prior to the rendition of the final judgment, it is deemed unnecessary to consider them. By the terms of the judgment appealed from, the proceeds of the sale are to be held subject to any further orders of the court, and the rights of all the creditors are thereby saved.

Even if the stockholders were proper or necessary parties to the action, no objection on this ground appears to have been made in the court below, and is therefore unavailing here. (*Civil Code, secs.* 120–123.) Besides, as the stockholders are numerous, the question was one of a common interest, and the impracticability of bringing them all before the court is apparent from the record. It was, therefore, a case in which one or more should have been allowed to defend for all. (*Civil Code, sec.* 37.)

Upon the whole case we are satisfied that no error has been committed to the prejudice of the appellant, and the judgment is affirmed.