CASE 7—PETITION EQUITY—DECEMBER 9.

# McReynolds, &c. v. Smallhouse.

### APPEAL FROM DAVIESS CIRCUIT COURT.

1. THE STATE HAD THE RIGHT TO LEASE THE GREEN AND BARREN RIVER LINE OF NAVIGATION to the Green and Barren River Navigation Company for the term and in the manner provided in the act of March 9, 1868.

2. "AN ACT TO INCORPORATE THE GREEN AND BARREN RIVER NAVIGATION COMPANY," approved March 9, 1868, by which the Legislature of Kentucky leased to said company for thirty years the Green and Barren River line of navigation, with the right to collect tolls from steamboats, etc., passing through the locks which had been erected by the state of Kentucky on said rivers, IS HELD TO BE CONSTITUTIONAL.

   "No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title." (Sec. 37, art. 2, Constitution of Kentucky.)

   "The General Assembly shall have no power to pass laws to diminish the resources of the sinking fund," etc. (Sec. 34, art. 2, Constitution of Kentucky.)

   "No man or set of men are entitled to exclusive separate public emoluments or privileges from the community but in consideration of public services." (Sec. 1, art. 13, Constitution of Kentucky.)

McReynolds, &c. v. Smallhouse.

"No state shall without the consent of Congress lay any duty of tonnage." (Sec. 10, art. 1, United States Constitution.)

"The Congress shall have power . . to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." (Sec. 8, art. 1, United States Constitution.)

See opinion for a statement of facts and reasons, showing that the said act of March 9, 1868, did not violate either of the foregoing provisions of the constitution of the state of Kentucky or of the constitution of the United States.

3. The legislature had entire control of the fund accruing from the navigation of Green and Barren rivers until it was placed in the treasury to the credit of the sinking fund.

J. W. BICKERS, . . . . ⎫
AZRO DYER, . . . . . ⎬ . . . . . . For Appellants,
A. J. JAMES, . . . . . ⎪
HARLAN & NEWMAN, ⎭

CITED

Constitution of Kentucky, secs. 34, 37, art. 2; sec. 1, art. 13.

Constitution of United States, sections 8, 10, article 1.

Cooley's Constitutional Limitation, 148, 149, 591, 592, 523–525.

Session Acts 1844–5, p. 69; Loughborough's Statutes, 292.

Internal Improvement Reports, 1856, 1858, 1860, 1865.

Washburn on Eastern and Southern "Navigable Streams."

Wille's Reports, 111, Mayor of Nottingham v. Lambert.

Debates Kentucky Constitutional Convention, 1849, pp. 773, 774.

An Act to incorporate the Green and Barren River Navigation Company (2 Session Acts 1867–8, page 599).

13 Missouri, 112.      . 11 Wisconsin, 448.      11 Ohio, 24.

19 Indiana, 407.        30 Illinois, 434.        13 Iowa, 250.

10 Florida, 112.        1 Huston (Delaware) 580.

42 Pennsylvania State (6 Wright) 226, Flanagan v. Philadelphia.

15 American Law Register, 238, Woodman v. Kilbourn, &c.

22 Howard, 238, Sinnot, &c. v. Davenport, &c.

12 Connecticut, 24, Kellogg v. Union County.

18 Connecticut, 501, Thames Bank v. Lovell.

15 Wendell, 113, The People v. Saratoga Railroad.

6 McLean, 71, Columbus Insurance Company v. Peoria Bridge Co.

1 United States Statutes at Large, 184, 190, 243, 463, 636.

2 Peters, 250, Wilson v. Blackbird Creek Company.

3 Blackford, 193, Cox v. State.        4 Littell's Laws, 208.

3 Selden, 9, Newell v. People.        5 Wallace, 556, The Hine.

7 Wallace, 740, The Belfast.          8 Smedes & Marshall, 773.

McReynolds, &c. v. Smallhouse.

20 Johnson, 97, Hooker v. Cummings.
33 California, 334, Carson v. Patterson.
18 Howard, 421, Wheeling Bridge Case.
16 B. Monroe, 167, Alves v. Henderson.
12 Wheaton, 419, Brown v. Maryland.
12 Howard, 457, The Genesee Chief.
15 Peters, 158, Graves v. Slaughter.
41 Alabama, 246, Lott v. Morgan.
14 Howard, 568, Veazie v. Moor.
20 Howard, 296, The Magnolia.
15 Pennsylvania (3 Harris) 44.
2 Massachusetts, 492, Commonwealth v. Combs.
1 Pickens, 180, Commonwealth v. Charlestown.
3 Howard, 229, Pollard's lessee v. Hagan, &c.
4 McLean, 287, Halderman, &c. v. Beckwith.
3 Wallace 782, Milnor v. Railroad Company.
6 Wallace, 31, Steamship, &c. v. Master, &c.
3 United States Statutes at Large, 125, 665.
2 United States Statutes at Large, 18, 484.
3 Littell, 481, Elmendorff v. Carmichael.
3 Wallace, 721, Gillman v. Philadelphia.
1 Vattell, chapter 5, section 69, page 87.
4 United States Statutes at Large, 821.
5 United States Statutes at Large, 807.
7 Dana, 429, Brubaker v. Paul, &c.
6 Indiana, 84, State v. Springfield.
4 Wallace, 411, The Moses Taylor.
7 Howard, 394, Smith v. Turner.
9 Wheaton, 1, Gibbons v. Ogden.
2 Yerger, 534, Lowry v. Francis.
1 Pickens, 492, Kean v. Stetson.

T. H. HINES, . . .⎫
CHARLES EAVES, ⎭ . . . . . . . . . For Appellee,

CITED

Constitution of the United States, sections 8, 10, article 1.
Constitution of Kentucky, sections 34, 37, article 2.
Constitution of Kentucky, section 1, article 13.
Constitution of Indiana, section 19, article 4.
Constitution of Michigan, section 20, article 4.
2 Stanton's Revised Statutes, page 352.
Session Acts, 1836, page 415.
Session Acts, 1867–8, page 599.
7 Law Register, No. 3, Railroad v. Cooper.

VOL. VIII.—30

Story on Constitution, section 949.
Law Register, January, 1870, Woodruff v. Packham.
Federalist, No. 22.
7 Indiana, 682, Indiana Central Railroad Company v. Potts.
2 Metcalfe, 168, Louisville, &c. Turnpike Co. v. Ballard, &c.
3 A. K. Marshall, 423, Bank of Kentucky v. Norton.
6 Wallace, 34, Steamship Company v. Port-wardens.
7 Bush, 353, Simpson County Court v. Arnold.
2 B. Monroe, 178, City of Louisville v. Hyatt.
4 Metcalfe, 75, Childes & Thomas v. Monroe.
2 Metcalfe, 222, Phillips v. Bridge Company.
7 Dana, 139, Dickey v. Turnpike Company.
3 Wallace, Gillman v. Philadelphia.
3 Metcalfe, 569, Johnson v. Higgins.
2 Duvall, 24, Griswold v. Hepburn.
2 Peters, Blackbird Creek case.
7 Howard, 403, Passenger case.
9 Wheaton, Gibbons v. Ogden.
3 Wallace, 782, Appendix.
31 Barbour, 572, Sharp v. Mayor of New York.
16 B. Monroe, 699, Newport v. Taylor's heirs.
12 Connecticut, Kellog v. Union Company.
18 Connecticut, Thames Bank v. Lovett.
28 Illinois, O'Leary v. Cook Company.
11 Indiana, 199, .Mewherter v. Price.
16 Michigan, 273, Ryerson v. Utley.
15 Barbour, 657, Mosier v. Helton.
14 Howard, 574, Veazie v. Moore.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

This action in equity was originally instituted in the McLean Circuit Court, and by change of venue was heard and determined in the Daviess Circuit. Upon the filing of the petition the appellants obtained an injunction enjoining and restraining the appellee (Smallhouse), who was one of the members of the Green and Barren River Navigation Company, from collecting any tolls from the appellants by reason of the passage of their boats in and through the locks on said rivers, the appellee being at the time the agent of the company, and authorized by the company to collect tolls. The appellants at the time they filed their petition—viz., in July, 1869—were navigating the

McReynolds, &c. v. Smallhouse.

waters of the Ohio, Green, and Barren rivers with their boats from the city of Evansville, Ind., to various points on Green and Barren rivers, and upon the refusal of the appellee to permit them to pass the locks on Green River with their boats without paying toll these proceedings were instituted.

The appellee, in behalf of the company and in his own defense, relies upon an act of the Legislature of Kentucky, passed on the 9th of March, 1868, entitled "An act to incorporate the Green and Barren River Navigation Company," by which he alleges the legislature leased to the company for thirty years the Green and Barren River line of navigation, with the right to collect tolls, etc., together with all the franchises and appurtenances thereunto belonging.

Upon the hearing of the cause in the court below the appellants' petition was dismissed and the injunction dissolved, and the cause is now in this court for revision.

The appellants insist that so much of the charter of this navigation company as empowered it to charge and collect tolls from boats running upon those rivers is in violation of both the state and federal constitutions.

*First*, that it violates section 37 of article 2 of the constitution of this state, declaring "that no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title."

*Second*, that it violates section 34 of article 2 of the state constitution, declaring that "the General Assembly shall have no power to pass laws to diminish the resources of the sinking fund as now established by law until the debt of the state be paid; but may pass laws to increase them," etc.

*Third*, that it violates, the first section of article 13 of the state constitution, declaring that "no man or set of men are entitled to exclusive separate public emoluments or privileges from the community but in consideration of public services."

*Fourth,* that it violates that portion of the constitution of the United States "which forbids any state without the consent of Congress to levy any duty of tonnage."

*Fifth,* that it is in violation of that portion of the constitution of the United States which gives to Congress power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes."

The preamble to this act of incorporation is as follows, viz.: "Whereas the Green and Barren River line of navigation has always been a charge upon the state, and is now largely in debt, and without prospect of any better condition; and whereas it is of great importance to the country to keep said line in working order, and at the same time to avoid any public expense if possible, and believing that object can be accomplished by letting it to an incorporated company; therefore be it enacted," etc.

The second and third sections of the act transfer to the company all the rights, franchises, etc., pertaining to this line of navigation, to be used for the purpose of navigation, for and during the term of thirty years; and direct the executive of the state to cause possession thereof to be delivered to the company, upon its complying with the other provisions of the act.

The fourth section of the act makes it the duty of the company to use due diligence in keeping up said line of navigation in good repair, etc.; "to pass and permit all boats, crafts, and other things to navigate said rivers according to certain specified rates herein prescribed as tolls, which shall inure to said company."

The sixth section provides that "the rate of tolls for such boats, as passenger and freight steamboats, passing such locks shall not exceed per ton, measured as aforesaid, fifty cents at the first lock, thirty cents the second, twenty cents the third, and ten cents each at the two other upper locks, and the same

for returning; and for all other boats, barges, rafts, water-crafts, etc., it may establish tolls from time to time, not exceeding the present rates established by the board of internal improvement, as applicable to the Kentucky, Green, and Barren River lines of navigation."

The eleventh section of the act requires the company to execute bond with surety, payable to the commonwealth of Kentucky, to be approved by the governor, in the penal sum of five hundred thousand dollars, for the performance of the duties and obligations imposed upon it by the act.

This bond was executed by the company, approved by the governor, and the possession of the improvements as required by the act delivered to it. The first objection urged by counsel for appellants against the constitutionality of the act in question has been in effect settled by this court in the case of Phillips v. The Covington & Cincinnati Bridge Company, 2 Met. 222, and also in the case of the Louisville & Oldham Turnpike Road Company v. Ballard, 2 Met. 168.

In the case of Phillips v. The Bridge Company this court says, "that the constitutional provision under consideration was adopted to prevent amendments to legislative enactments, by which distinct and unconnected matters might be introduced; but that this provision of the constitution should not be so construed as to restrict legislation to such an extent as to render different acts necessary where the whole subject-matter is connected, and may be properly embraced in the same act;" and the rule laid down in this case is "that none of the provisions of a statute should be regarded as unconstitutional when they all relate directly or indirectly to the same subject, have a natural connection, and are not foreign to the subject expressed in the title." This rule of construction has been adhered to by this court in several subsequent cases, and is sustained upon both principle and authority.

The act in this case is entitled "An act to incorporate the

Green and Barren River Navigation Company." The object to be accomplished by the act is to create a company for the purpose of navigating Green and Barren rivers with its boats, and this is in fact the subject-matter of the title. The legislature, having created the corporation, proceeds by various sections of the act to prescribe the rights, duties, and obligations of the company. In enumerating the rights to which this company is entitled we find that it has the right to navigate these streams with its boats for thirty years, and to charge tolls for the passage of other boats than its own not exceeding certain prescribed rates, and in order to facilitate commerce and trade, and to develop the resources of wealth along the line, it is empowered to work coal-mines, and to lease and purchase real estate. In consideration of these rights it obligates itself to keep the locks and dams in repair, and to permit the owners of all boats to navigate said rivers upon the payment of tolls as regulated by the act.

We perceive no provision contained in any of the various sections of the charter inconsistent with its title. The right to collect tolls is certainly not foreign to the subject embraced in the title, but has a direct relation to it; for without the tolls the corporation would be divested of all means enabling it to keep its improvements in repair; as it can hardly be presumed that the company would assume such heavy pecuniary obligations as that of improving the locks and dams without any other consideration than the right of passage with its own boats, and at the same time giving to all other vessels this right of navigation free of toll. One of the principal objects of the legislature in conferring these rights was to enable this company to raise means by which it would be able to comply with its agreement, and thereby rid the state of a burden that was constantly increasing upon the taxable property of the citizen. Such powers as are delegated by this act are given in most instances to all corporations created for the purposes

McReynolds, &c. v. Smallhouse.

of internal improvement—the right to turnpike companies to charge tolls, to purchase land for toll-houses; to railroad companies to purchase land for depots, to submit questions of taxation to the vote of the people to enable them to build roads, to sell bonds and mortgage their roads in aid of their construction. All the rights and powers given this corporation have reference to the subject-matter of the act, and to decide the present act unconstitutional upon the ground that it is in violation of section 37, article 2, of the constitution, would be in effect annulling nearly all charters heretofore granted by the legislature for internal improvement purposes. .

No encroachment should be made upon the legislative powers of a state, by deciding its laws to be in violation of the constitution, unless there has been a clear and palpable violation of that instrument. All doubts in the mind of the judge must result in favor of the validity of the law. This is no issue between the commonwealth and the company as to the extent of the power conferred upon it by the act. In such a case a different rule would prevail, and the law would be construed strictly as against the corporation. The grant of the power is in this case conceded, and the only question made is *as to the constitutionality of the law*, and this court must uphold the law unless it is clearly within some constitutional inhibition.

The appellants also insist that the transfer or lease by the state of these improvements diminishes the resources of the sinking fund, and that for this reason the act is void. The act establishing the sinking fund provides that " a sinking fund shall be and is hereby created and established, to be made up (among other things) of profits which may accrue on works of internal improvements made by the state, or in which the state is or may be interested." The constitution provides that the resources of the sinking fund shall be sacredly set apart and applied to the payment of the state debt. This court judicially knows that the state debt has not been paid.

McReynolds, &c. v. Smallhouse.

The state of Kentucky appropriated a large sum of money in improving and constructing the locks and dams on Green River. Previous to the time at which these improvements were made this stream was only navigable for boats of any magnitude during high water. The natural obstructions to navigation consisted of falls and shoals, all of which obstructions were removed or overcome by reason of these improvements, and the river, except when the locks were out of repair, made navigable as many months in the year as the Ohio.

These improvements seemed to have yielded the state but little if any revenue, and in March, 1868, at the time of the passage of this act, the legislature of the state (composed in part of many members directly and vitally interested in the prosperity of that part of the state) in the preamble to the act announced that the improvement "had always been a charge on the state, and was then largely in debt, without prospect of any better condition." The truth of this legislative declaration, in the absence of proof, we can not question. The record also shows that some of the dams were much out of repair, and were about to be swept off by the waters. The legislature refused to repair the improvements by increasing the burden of taxation on the citizen. No revenue was being derived from these rivers, and instead of increasing the revenues of the sinking fund, thereby lessening the state debt, their constant repairs were increasing the indebtedness. The tolls accruing from the navigation of these rivers could all have been appropriated to repairing the locks and dams. The legislature had entire control of this fund for such purposes until it was placed in the treasury to the credit of the sinking fund, and then it must be applied to the payment of the state debt.

By a large expenditure of money the state had made Green River practically a navigable stream. Previous to this expenditure it was only navigable for a few months in the year for

large boats, and then not exceeding seventy-five or one hundred miles from its mouth. A wild but fertile country had been developed by these improvements, and with it a trade and commerce equal almost to that of any other portion of the state; lands had increased in value from five to thirty dollars per acre, and the state of Kentucky had either to continue to increase the burden of taxation upon the people to preserve the improvements, or resort to some other means by which they could be secured. In order to save this expenditure to the state, and that its people might reap some benefit from it, the legislature saw proper to lease it to this company. Whether this contract of leasing was a good or bad contract is not for this court to determine. There is no fraud alleged in the procurement of this act; there is no allegation that the tariff on other boats amounts to a prohibition of navigation upon these streams, or that the tolls charged the present appellants were exorbitant; there is no allegation that the charges for freight are excessive, or that the company failed to provide means for transporting freight and passengers, or have failed to comply with its contract. All the proof upon this subject is inapplicable to the allegations of the petition; and if these wrongs exist, the parties aggrieved thereby have an ample remedy through the judicial department of the state. The leasing of these improvements and their continued preservation may be the means of increasing the resources of the sinking fund; but whether it does or not, it certainly does not lessen these resources, as but for the leasing these improvements would have been lost to the state, and to the people directly interested in preserving them. Any other view of this question would compel the state to hold on to these improvements at the expense of the taxable property of the state, or permit them to go to ruin and decay. This court, in the case of the Simpson County Court v. Arnold (7 Bush, 354), sustains this view of the case.

It is not deemed necessary to allude to the other constitutional questions made. These rivers are exclusively within the territory of Kentucky, and were made navigable by large expenditures of money by the state and its citizens. The citizen of any other state has the same right to navigate these rivers that a citizen of this state has by paying the same tolls, and being made subject to the same restrictions. If no discrimination is made there can be no complaint. The state has the power to improve her rivers by making them navigable, and to charge tolls for the use of them. If Congress has any power to prevent a state from exercising this right, it will be time enough to decide such a question when such prohibitory legislation is enacted.

That the appellee or the company is now making large profits by navigating these rivers is no argument against the validity of the charter. All persons, so far as the proof shows, are required to pay the same tolls upon these rivers. No inequality exists, except so far as the lessees are concerned; and their undertaking to keep the improvements in repair was deemed a sufficient consideration by the state for the powers conferred, and with which this court, as the case is now presented, can not interfere.

In the opinion of this court the act in question is not in violation of either the state or federal constitutions, and the judgment of the court below is affirmed.

Judge LINDSAY did not sit in this case.