## Case No. 12,230.

### The ST. JOSEPH.

[10 Chi. Leg. News, 269; 7 N. Y. Wkly. Dig. 35.] [1]

District Court, E. D. Michigan. 1878.

ADMIRALTY — MARITIME CONTRACTS— SHIPPING— MASTER—TOLLS.

1. An undertaking whereby a propeller, in consideration of its freight for the carriage of goods, agrees to collect of the consignee advances and charges thereon, and repay them to the party from whom it receives the goods, is a maritime contract upon which a libel in rem will be sustained.

2. Such contracts are within the scope of the master's authority, where they are shown to be customary in the trade and made with the knowledge and assent of the owners of the vessel.

3. A libel in rem will lie for tolls imposed by a state statute, in favor of corporations organized for the improvement of rivers and harbors.

The libel of Ashley & Mitchell alleged that the libellants were forwarders and warehouse men, in Detroit, whose business it was to receive, forward and ship goods to various ports by lake vessels; that they delivered certain goods on board the St. Joseph, consigned to different ports upon the lakes, the master receiving them under an agreement to transport them to the place of delivery, collect libellant's charges for storage and advances, and pay them over to libellants; that there was due libellants $811 for such charges collected and not paid over, for which a lien was claimed upon the propeller. The libel of the Alpena Harbor Improvement Co. alleged its existence as a corporation for the purpose of improving the Alpena river and harbor; that under its charter it had made such improvements, by dredging out the channel and maintaining docks, piers and wharves in the river; and that by virtue of its charter it was entitled to collect and receive from each boat, vessel or craft using said channel, or passing through said improved river or the works of said company, and upon the cargo of such vessel such certain tolls and charges fixed by commissioners appointed under the statute, which tolls were a lien upon the vessel, under provision of the statute; that the propeller was engaged in the transportation of merchandise and passengers to and from the port of Alpena, which rendered it necessary for her to use libellant's improvements, whereby it became liable to pay such tolls and charges, and being liable, her master and owners promised to pay the same, and that there was due therefor $113.52.

Wm. A. Moore, for libellant.

H. C. Wisner, for claimants.

BROWN, District Judge. As to the libel of Ashley & Mitchell: It appears from the testimony that the propeller was engaged in

[1] [7 N. Y. Wkly. Dig. 35, contains only a partial report.]

trade from Cleveland to Saginaw; that libellant's claim was made up of charges advanced to the transportation companies from whom they had received the goods, and of their own charges for storage; that it is customary, not only in the line in which the Benton and St. Joseph ran, but among transportation companies generally upon the lakes, to carry goods charged with their advances, to collect them upon the delivery of the goods, and to repay them to the parties by whom the advances are made. It also appeared that the goods were delivered to the propeller, with bills of lading attached, showing the items of dockage and advance charges; that the Benton and St. Joseph were in the habit of stopping at libellant's dock each trip, and receiving passengers and freight. The testimony also shows that the owners of the propeller, the master also being a part owner, had full knowledge of, and consented to, this arrangement, and that each boat was in the habit of rendering a settlement every month; that the goods were principally consigned from New York to Saginaw, to be transported from Detroit by particular boats; that they were received at Detroit by libellants from the railway companies, to whom the charges for freight were paid, and were delivered by them to the steamers, under a like undertaking to pay their advances. This custom of doing business has existed for years upon the lakes, and is believed to be general among transportation companies throughout the United States.

Two questions arise in this case: (1) Is the contract maritime? (2) Had the master authority to bind the vessel by a contract of this description?

1. I see no reason to doubt the maritime character of this contract. The main business of the steamer was to transport the goods by water. This contract carries with it such incidental and subsidiary undertakings as is usual in the trade, and necessary for the convenient transaction of the business in which the propellers are engaged. A somewhat similar contract claimed the attention of the court in Monteith v. Kirkpatrick [Case No. 9,721], which was a suit by common carriers, from Albany to New York, against the consignee, for their own freight, and advance charges paid by them at Albany when they received the goods. The court held that under the usage of the trade proven in that case, the right to recover the advances stood upon the same footing as the right to the freight.

2. Had the master the power to bind the owners by this contract? While, if this were solitary instance, I should doubt whether the master would have authority to make such arrangement on behalf of the vessel, I deem it entirely clear that such power exists wherever the usage is general, and especially in this case, where it was sanctioned by the owners of the vessel. In the case of The Hardy [Case No. 6,056], it was held by the learned district judge for the district of Minnesota, that a contract by which a steamboat engages to carry goods, and collect from the consignee the freight money and all charges, advances and insurance upon the goods, together with the price thereof, and after deducting the freight to pay libellants the balance, was a maritime contract of which this court has jurisdiction by a proceeding in rem. So far as this case conflicts with that of The Robinson, decided by the late circuit judge of this circuit, and cited, though not reported, in The Williams [Case No. 17,710], I should feel constrained to follow the latter case. This case, however, extended only to the undertaking of the master in reference to the sale of the cargo and return of the proceeds under a C. O. D. bill of lading, and apparently does not touch the question of advance charges. The case of The Hardy [supra] was also followed by Judge Hill, of the district of Mississippi, in the unreported case of The Emma, in which a libel was sustained for failure to pay over the price of the goods collected upon a C. O. D. bill of lading.

As to the libel of the Alpena Harbor Improvement Co.: While the question was not formally discussed upon the argument, I may say in passing, that I see no valid objection, in the absence of congressional interference, to the enactment of laws for the internal improvement of rivers and harbors of a state. Under the constitution, the power of congress over commerce between the states is supreme, but in cases where congress has not seen fit to assert that power, the legality of improvements and even of obstructions, authorized by state authority, has been repeatedly affirmed by the supreme court of the United States. Wilson v. Brackbird Creet Marsh Co., 2 Pet. [27 U. S.] 245; Veazie v. Moore, 14 How. [55 U. S.] 568; Gilman v. Philadelphia, 3 Wall. [70 U. S.] 713; U. S. v. New Bedford Bridge [Case No. 15,867]; Kellogg v. Union Co., 12 Conn. 7; Thames Bank v. Lovell, 18 Conn. 500; People v. Rensselaer & S. R. Co., 15 Wend. 113; McReynolds v. Smallhouse, 8 Bush, 447; Craig v. Kline, 65 Pa. St. 400; Chicago v. McGinn, 51 Ill. 27; Duke v. Cahawba Nav. Co., 16 Ala. 372; Packet Co. v. Keokuk, 95 U. S. 80.

Chapter 84, Comp. Laws of this state, authorizes the formation of corporations for the purpose of constructing canals or harbors, or improving the navigation of rivers or streams in this state, by dredging out the channel, making new entrances, and constructing canals to straighten the same, etc. Section 11 of the act authorizes such company to charge such rates of toll for the use of said canal or harbor, or for the use of any such improved river or stream, or for any dock, wharf or other improvements as may be established by three commissioners; and provides that such tolls or charges shall be a lien upon

the vessel or boat using the improvements of said company, and may be collected under the provisions of the water craft law of the state; provided, however, "that no charge shall be made for the use of any river, where such improvement has been made, for any boat, vessel, raft or craft of any description, which might or could have used said river before said improvement had been made." Pursuant to this charter the libellant was organized as a corporation and proceeded to cut a channel through the bar at the mouth of Alpena river, to deepen the channel of the river, and also to construct wharves for the convenience of vessels. It is proven that the draft of the propeller St. Joseph was such that she would not have been able to enter the port of Alpena without making use of such improvements. This statute seems to me not only unobjectionable but a most wise and beneficent provision for promoting the commerce of the state.

Objection, however, is made to the jurisdiction of this court to entertain a libel in rem for tolls. I think the question is disposed of, however, in the opinions of the supreme court in Ex parte McNeil, 13 Wall. [80 U. S.] 236; and Ex parte Easton, 95 U. S. 68. In the first, a suit upon the admiralty side of the district court, was sustained for half pilotage fees, given by the state law to the pilot who first tendered his services to a vessel coming into port, notwithstanding he was refused. The law of the state of N. Y., provided for a system of licensed pilots, to be appointed upon recommendation of the board of wardens of the port of N. Y. The act further provides that the pilot who should first tender his services might demand of the master of any vessel to whom the tender was made, and by whom it was refused, half pilotage. The court held that this was not a penalty, but was a tender of services, upon which the law raised an implied promise to pay the amount provided in the statute, and that a court of admiralty had undoubted jurisdiction of such a contract. In the case of Ex parte Easton, the same learned court held that wharves, piers and landing places being essential to commerce, a contract for wharfage was a maritime contract, standing upon the same footing as materials and supplies, for which, if the craft be a foreign one, a maritime lien existed against the ship in favor of the proprietor of the wharf. It seems to me that the case under consideration falls within the scope of this decision. The contract is maritime. The law of the state gives the lien upon the ship, and this court is the proper tribunal for its enforcement. The Sottawanno, 21 Wall. [88 U. S.] 558.

A decree will be entered for the libellants in each case.