ENGMANN vs. The Estate of JOHN IMMEL, Deceased.

*December 13, 1883 — January 8, 1884.*

EVIDENCE: LIMITATION OF ACTIONS. *(1) Credibility of witness: instructions to jury. (2) Transactions with deceased person. (3) Agency of wife. (4) Partial payment as evidence of new promise.*

1. It is not error to instruct the jury that, unless something in the case casts discredit upon it, they must accept the testimony of an uncontradicted witness as true.
2. In an action upon a promissory note against the estate of a decedent, testimony of the plaintiff that he handed the note to his wife and told her to collect it for him, during decedent's life, is not incompetent under sec. 4069, R. S.
3. Such delivery of the note and instruction to his wife constituted her the agent of the plaintiff, and qualified her to testify as to her doings within the scope of the agency.
4. Partial payment upon a contract, either before or after the statute of limitations has run thereon, is, by itself, and in the absence of any condition or qualification which destroys its effect, sufficient evidence of a new or continuing contract to take the case out of the operation of the statute.

APPEAL from the Circuit Court for *Milwaukee* County. The case is stated in the opinion.

For the appellant there was a brief by *E. P. Smith, Nath. Pereles & Sons*, and oral argument by *Mr. Smith.* They argued, *inter alia:* 1. The credibility of the evidence as to the signature was solely for the jury. 1 Greenl. on Ev., 577; *Bierbach v. Goodyear Rubber Co.*, 54 Wis., 213; *Van Doran v. Armstrong*, 28 id., 241; Sharswood's Starkie on Ev., 730, 874. 2. Evidence by a party of the appointment of an agent to communicate directly or transact business with a person since deceased, is within the spirit of the prohibition in sec. 4069, R. S.; such evidence would tend to show a personal transaction with the deceased. *Koehler v. Adler*, 91 N. Y., 657; *Chadwick v. Fonner*, 69 id., 404; *Baldwin v. Schmidt*, 5 Hun, 454; *Haughey v. Wright*, 12 id., 179; *How-*

*ell v. Van Siclen*, 6 id., 116; *Barrett v. Carter*, 3 Lans., 68; *McIndoe v. Clarke*, 57 Wis., 165. 3. The wife, not being a party, was not a competent witness. The evidence did not establish her agency. 4. The mere fact of part payment does not imply a promise as an inference of law; that must be left to the jury. *White v. Jordan*, 27 Me., 370. And it may be questioned whether that fact alone will authorize the jury to infer a promise to pay the rest. Our statute does not change the common law rule. *Smith v. Westmoreland*, 12 Smedes & M., 663; *Davidson v. Harrison*, 33 Miss., 41; *Davies v. Edwards*, 6 Eng. L. & Eq., 520. An acknowledgment and promise must be to a *known agent;* and partial payment to a stranger asking for only a partial payment will not be a binding recognition of the whole debt. *F. & M. Bank v. Wilson*, 10 Watts, 261; *Kyle v. Wells*, 5 Harris, 286; *Gillingham v. Gillingham*, id., 302; *Bloodgood v. Bruen*, 8 N. Y., 362; *Wakeman v. Sherman*, 9 id., 85; *McKinney v. Snyder*, 78 Pa. St., 497; *Lock v. Wilson*, 9 Heisk., 784. The retention of the claim during the life of the deceased warrants strict scrutiny. *Kearney v. McKeon*, 85 N. Y., 136; *Kent v. Lasley*, 24 Wis., 658; *Hill v. Wilson*, 7 Eng. (Moak), 459. The payment in 1877 after the statute had run could not imply a promise to pay the whole. The debt was then extinguished, as if it had never been. *Brown v. Parker*, 28 Wis., 27; *Carpenter v. State*, 41 id., 41; *Sprecher v. Wakeley*, 11 id., 432; *Knox v. Cleveland*, 13 id., 245; *Pierce v. Seymour*, 52 id., 272. Payment, by itself, does no more than admit a debt to the amount paid; and, if the debt has been extinguished by the statute, cannot imply a promise to pay a residue. *Shoemaker v. Benedict*, 11 N. Y., 188; *Harper v. Fairley*, 53 id., 444.

*I. N. Frisby*, for the respondent.

ORTON, J. The plaintiff held the note of John Immel at the time of his death for $100, given November 18, 1870,

payable on demand, with ten per cent. interest until paid. The county court in probate allowed said note as a valid claim against the estate, less the payment of $10 in 1873 and of $10 in 1877 thereon. From this allowance the executor of said estate appealed to the circuit court, and in that court, after trial, the jury rendered a verdict for the whole amount of the note, principal and interest, less said two payments, and judgment was rendered thereon, from which this appeal is taken. The defense was that the claim was barred by the statute of limitations, and this was really the main issue. , The first point taken is that the execution of the note was not proved, and that the circuit judge erred in instructing the jury as follows: "You have heard the testimony of Mr. Frisby about the note, as to the genuineness of the signature. His testimony is uncontradicted, and unless there is something in the case which casts discredit on his testimony, you are bound to accept it as true." The witness Frisby, who was also the attorney of the plaintiff, testified that he was acquainted with John Immel in his life-time, and had done business for him, and had seen him write his name to one or two notes and to one or two affidavits, one of which he thought was on file in a suit he had for him in this same court, and knew his signature, and that he believed and had no doubt that the signature to the note was his. On cross-examination he testified that the time he saw the deceased so write his name was ten years ago, about the time of the date of this note, but that he can remember the looks of his signature, and can swear that he believes the signature to the note to be genuine. This was all the testimony there was on the question, and none was offered to rebut it.

1. It is claimed by the learned counsel of the appellant that the above instruction, in application to this testimony, that it was " uncontradicted," and that " unless there was something in the case which casts discredit upon it, the jury

are bound to accept it as true," was erroneous. This instruction would seem to be a self-evident proposition. It is the same as telling the jury that they must find according to the uncontradicted evidence, unless such evidence was discredited in some way. The instruction might have been made still stronger and it would have been strictly correct. They might properly have been instructed that there was nothing in the case which cast any discredit upon Frisby's testimony, for there was not. It is said that the jury ought to have been told that they might judge of its credibility, because ten years had elapsed since the witness saw the deceased write his name, and that this cast discredit upon his testimony. He did not say that it was ten years since he had *seen* his signature. But there is nothing even improbable that the witness, an attorney at law, should remember the signature of his client, which he saw him make several times ten years ago. There is no law or respectable decision which would justify the judge in instructing the jury in respect to such evidence as this, that they might reject or disbelieve it at their pleasure. There is no question of credibility about it, and the jury must "accept it as true." The jury might as well, in their arbitrary and sovereign pleasure, render a verdict without evidence as against evidence. The cases cited by the learned counsel are applicable only to contradicted or discredited evidence, or where the jury have some good legal reason for disbelieving the testimony of a witness. This testimony was ample proof of the signature of this note, standing alone. It is only in relation to facts contested by the evidence upon which the jury are allowed to render a special verdict. This has often been decided by this court, and if the court had said to the jury in this case that this fact had been proved, it would have been correct. It would be extremely unsafe, as well as most unreasonable, to allow a jury to reject testimony which is uncontradicted, and from a wit-

Engmann vs. The Estate of John Immel, Deceased.

ness unimpeached, and which is not liable to any question by any of the rules or tests of credibility known to the law; and any instruction to the contrary would clothe the jury with a supreme, arbitrary, and irresponsible power. It is the indisputable duty of courts to set aside verdicts rendered against the evidence, as this unquestionably would have been if the jury had found that the execution of this note had not been proved by this testimony.

2. It is claimed that the testimony of the plaintiff that he authorized his wife Elizabeth to collect the note for him during the life-time of Immel, and gave her the note for that purpose, is objectionable because relating to a transaction with the deceased. This was very clearly not a transaction with the deceased, and was not a matter about which the deceased could have testified if he had been living. It related to a matter entirely independent and outside of any demand upon him for or payment by him of the $10 upon the note in 1873. It is proof of a mere agency of the wife for the husband, the plaintiff, to do an act which she might have never done.

3. It is claimed that the wife could not testify to the fact that she collected from the deceased while living, and that he paid to her, $10 upon the note for her husband, because she was the wife of the plaintiff, and not a party to the suit, and therefore an incompetent witness for or against him.

That the wife *ex necessitate* may be an agent for her husband, and testify as such of her doings within such agency, has been too often decided by this and all other courts to justify the citation of authority. The plaintiff testified that he gave the note to his wife and told her to collect it. Can it be that this is not an agency of the wife from the husband to receive payment on the note? But it is contended by the learned counsel that it is not. An agency could not well be created by more pertinent and appropriate language. The witness Elizabeth testified that "she went to her

brother, John Immel, and told him to give her some money on the note, and he gave her $10 on it." This was in the year 1873. Appolonia Miller testified that the plaintiff in the year 1877 gave her the note, and told her to collect the note or get what she could on it, and this she told to the deceased, and that he paid her $10 on it. This testimony was uncontradicted, and on cross-examination was not weakened. There are many exceptions taken in relation to all this testimony, but they are not supported. And so it may be said of the exceptions to the instructions of the court to the jury relating thereto. They seem to be full and fair, and express the law.

4. The last and most material question is whether these two payments — the one in 1873 and the other in 1877 — on the note are evidence of a new or continuing contract, so as to take the cause out of the operation of the statute of limitations. John Immel died in 1880, and this note was presented as a claim against his estate in September of that year. In respect to these two payments the jury were instructed that it must appear to them, "from the circumstances in the case, that the debtor intended to recognize the debt as subsisting, and that he was willing to pay it" in order to keep the obligation alive; and again, "to make these part payments effectual, they must be satisfied there was an actual payment of something of value, and that the debtor intended at the time to recognize the debt as subsisting, and that he was willing to pay it." It is claimed in the brief of the learned counsel that the mere fact of these payments does not imply a promise to pay, and that that must be left to the jury; and *White v. Jordan*, 27 Me., 370, is cited to this effect. The instructions certainly go the full length in leaving to the jury the legal effect of these payments, and in language quite favorable enough to the appellant.

We need not concern ourselves very much with the broad

position that after the debt is once extinguished by the running of the statute it cannot be renewed or continued by a new promise to pay or payments on it, or the authorities cited to support it, for here the statute had not fully run from the first payment to the last. It must be admitted that the authorities, in respect to the effect of mere payments as evidence of a continuing liability on the contract after the statute had run upon it, are somewhat in conflict. But we think the decided weight of authority is that payments on the note after the six years are evidence to go to the jury upon the question whether the debtor did not intend to continue his obligation thereon, and recognize the debt as subsisting, and, in effect, promise to pay it, and that the authorities are nearly uniform that payments within the six years have the effect to again set in operation the statute for another period of limitation. This may be regarded as the common law established, not by statute, but recognized by the courts. But our statute makes this an exception to the requirement that the promise or acknowledgment must be in writing. It recognizes, in very plain language, the law as held by the authorities, and by the weight of authority, on both questions. Sec. 4247, R. S., provides that nothing contained in the preceding sections, requiring the acknowledgment or promise to be in writing in order to be " evidence of a new or continuing contract to take the cause out of the operation of the statute," " shall alter, take away, or lessen the effect of a payment of any principal or interest," etc. This is very strong language,— *alter, take away, or lessen the effect of payment*, to take the cause out of the operation of the statute, etc.,— and it either means that the effect of such payment shall be to either continue the liability of the debtor after the statute has run, and to renew the contract for another six years, if it has not fully run, or it means nothing. It is the unquestionable meaning of the language that payment shall have the effect of evidence of a new

promise. This section forms an exception to sec. 4243. The language of that section is *negative:* "no acknowledgment or promise shall," etc., *unless in writing.* The section under consideration establishes the *affirmative* of the proposition as an exception, that, so far as payment upon the contract may be made at any time, it "shall be sufficient evidence of a new or continuing contract," although not in writing. Putting both sections together, and reversing the proposition, they are, in effect, that an acknowledgment or promise shall be in writing, unless they shall consist of a payment of any principal or interest, and in that case such payment shall be evidence of a new or continuing contract, so as to take the case out of the operation of the statute. This construction is strengthened by the following section (4248), which provides that, in the case of joint contractors, "no one of them shall lose *the benefit* of the provisions of this chapter, so *as to be chargeable,* by reason only of *any payment* made by any other or others of them." What can be the possible *benefit* of these provisions, from *payment,* unless it be to take the cause out of the operation of the statute, or as evidence of a new or continuing contract. The words "effect" and "benefit" have too strong a meaning to be treated as nugatory or senseless.

It will be observed that the statute makes no distinction between claims barred by the statute and those not barred; and when the language in its natural meaning may as well include and embrace both cases, we have no right to introduce an exception which the statute does not make. If this be the true construction,— and there can be no doubt of it, — then the language, "sufficient evidence of a new or continuing contract," may mean that payment before the statute has fully run shall be sufficient evidence of *a new or renewed contract,* and that payment after the statute has run shall be sufficient evidence of a continued continuing contract, so as to take the cause out of the operation of the

Engmann vs. The Estate of John Immel, Deceased.

statute. Under the first clause it renews the contract for six years more, and in the latter it continues the contract after it is barred by the statute. The word "continuing," as here used, has the natural meaning of perpetuating, protracting, or prolonging from one time to another. Or, these two words may have nearly the same meaning, and if so they are equally applicable to the contract both before and after it is barred by the statute. The payment would seem to be evidence of a new contract before it is barred by the statute, rather than a continuance of it, for it continues yet for a time, anyway, by its own terms.

We hold that the statute makes a payment upon the contract at least *prima facie* evidence of a promise to pay it, and therefore renews it for another term of six years, and that the payment of $10 on this note in 1873 had that effect on the note, and that the payment of $10 on it in 1877, before the six years had expired since the last payment, had the same effect to renew the note for another six years, which had not expired when this suit was commenced. Having thus held that the statute was intended to govern such a case, and in terms embraces such a case, it would seem needless to cite authorities in support of the common law doctrine to the same effect, for we hold that the statute in this respect was made declaratory of the common law. To give the principle any effect, it must be held, also, that a payment without conditions or qualification, or anything being said or done to rebut the *prima facie* effect of such evidence, becomes and is, under the statute, *sufficient* evidence of a new promise, so as to take the cause out of the operation of the statute. But, of course, such an effect may be rebutted by proof that the payment was made for some other purpose, or with a reservation, condition, or qualification. When the circumstances of the payment are all before the jury, then it is proper to instruct them, as the learned judge did in this case, that "the law provides, where

there is a new promise, and there is a payment on account, that it shall keep the obligation alive, *provided* it appears to them, from the circumstances in the case, that the debtor intended to recognize the debt as subsisting, and that he is willing to pay it;" and the same language is used in respect to payment alone.    This instruction seems to be approved by the learned counsel of the appellant in his brief, where he says that " the mere fact of part payment does not imply a promise as an inference of law; that must be left to the jury."    Notwithstanding a mere payment, unexplained, may imply a new promise, and in that respect the position of the learned counsel is incorrect, yet in all cases it is a fact for the jury, for there may be circumstances which would destroy the effect of such payment, with reference to the statute of limitations.    I do not understand that the learned counsel contests the position that the jury may find a new promise to pay, and that it will extend the limitation, if made before the statute has run on the contract, from mere payment; but he claims that a payment after, will not have that effect. In our view, the statute had never fully run upon this note until after this suit was brought, by reason of payments before the bar of the statute had taken effect; so that, as said before, the authorities cited by the learned counsel have no application to the case.

In Michigan the statute is the same as ours, except in respect to joint contractors.    As to them, it uses the language, " by reason of any acknowledgment or promise made and signed;" while our statute substitutes the word "payment," or "by reason of any payment;" and yet in *Mainzinger v. Mohr*, 41 Mich., 687, it was held that payment by virtue of the statute took the case out of the statute of limitations.

In *Cleveland v. Harrison*, 15 Wis., 670, it may not have been distinctly decided what the effect of our statute is as to payments, but it is strongly intimated that the statute was made to be in accordance with the common law estab-

lished by the decisions of the courts. But in *Eaton v. Gillet*, 17 Wis., 435, it is distinctly decided that " part payment within the period prescribed takes a case out of the statute of limitations." That this is the current of the decisions, we are referred by the learned counsel of the respondent to 2 Parsons on Con., 353; *Williams v. Gridley*, 9 Met., 482; *Sibley v. Lumbert*, 30 Me., 253; *Newlin v. Duncan*, 25 Am. Dec., 66; 7 Wait's Act. & Def., 228, 301, 307. That payment in part upon a contract, after the statute has run upon it, will have the same effect, we are referred to *Winchell v. Hicks*, 18 N. Y., 558; *Pickett v. Leonard*, 34 N. Y., 175; *Harper v. Fairley*, 53 N. Y., 442; *Carshore v. Huyck*, 6 Barb., 583; *Graham v. Selover*, 59 Barb., 313; *First Nat. Bank of Utica v. Ballou*, 49 N. Y., 155; *Ilsley v. Jewett*, 2 Met., 168; *Ayer v. Hawkins*, 19 Vt., 26; *Wheelock v. Doolittle*, 18 Vt., 440; *Emmons v. Overton*, 18 B. Mon., 643; *Walton v. Robinson*, 5 Ired. Law, 343; *Schmucker v. Sibert*, 18 Kan., 104; *Shannon v. Austin*, 67 Mo., 485; *Carroll v. Forsyth*, 69 Ill., 127, and many other cases. We may well say that such is the weight of authority, and therefore in construing the statute we think it was intended to embrace claims barred as well as those not barred, as to the effect of part payment. In this case, where it is contended on one side that the claim was already barred when the payment of 1877 was made, and on the other that it was not, we thought it our duty, once for all, to construe the statute and hold that part payment in either case is sufficient to take the case out of the statute. Although, perhaps, strictly, this question as to claims barred is not in the case as one of fact, as we view the evidence, yet we think it is involved in the proper construction of the statute.

We can find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.