Long, Respondent, vs. Mates, imp., Appellant.

*October 9—November 5, 1935.*

E. E. *Burns* of Platteville, for the appellant.

For the respondent there was a brief by *Kopp & Brunck-horst,* and oral argument by *W. Roy Kopp,* all of Platteville.

FRITZ, J.   On this appeal the question is whether a new liability on the part of the defendant, Mates, was created by payments of interest made in April, 1933, by the defendant, Gerlach, on a note dated March 1, 1921, and due March 1, 1922, and as to which the bar of the six-year statute of limitations had become complete on March 1, 1928, in respect to Mates.

Mates, as an accommodation maker, had joined with Gerlach in the execution of the note in consideration of a loan made solely to the latter by the plaintiff.   Gerlach by paying the interest to plaintiff until March 1, 1932, had tolled the running of the six-year statute of limitations as to himself, but as Mates did not participate in making those payments, nor consent to, or acquiesce therein, they could not serve, in view of sec. 330.47, Stats., to keep the obligation alive as against him as a joint debtor.   *Bishop v. Genz,* 212 Wis. 30, 32, 248 N. W. 771; *Kline v. Fritsch,* 213 Wis. 51, 53, 250 N. W. 837; *Gillitzer v. Ducharme,* 203 Wis. 269, 270, 234 N. W. 503.   As a consequence, especially in view of the rule that "the effect of the statute of limitations of this state extinguishes the right upon which it has completely operated" (*Eingartner v. Illinois Steel Co.* 103 Wis. 373, 375, 79 N. W. 433), there was no legal obligation whatsoever on the part of Mates to the plaintiff on that note after March 1, 1928.   However, plaintiff contends that a new contract on the part of Mates to pay the note was

created by the payment of interest thereon by Gerlach in April, 1933, under the following circumstances: In that month, Mates, accompanied by plaintiff's husband, called on Gerlach and asked and encouraged him to make some payment, if possible. Gerlach replied that he had no money, and Mates suggested that plaintiff's husband accept a sack of flour from Gerlach at the price of a dollar. That was done, and Mates then asked Gerlach whether he could pay a little interest and principal as soon as he got it. Gerlach said he would, and subsequently paid the balance of that year's interest to plaintiff.

Upon proof of those circumstances, the court found that during April, 1933, Mates had requested Gerlach to make a payment to plaintiff upon the note, which Gerlach did by turning over the sack of flour, and later paying the interest to March 1, 1933; and that those payments were made by Gerlach "in his own behalf and also in behalf of" Mates, who had "authorized and ratified the same." Upon those findings, the court concluded that Gerlach's payment in April, 1933, was made by him "in his own behalf and as the agent" for Mates; that "said payment was authorized, ratified and approved" by Mates; that it started the statute of limitations running anew from that date as to both defendants; and that therefore both were liable to plaintiff for the amount of the note.

Some of those findings and conclusions are not warranted by the evidence. Although the 1933 payments were made by Gerlach at the suggestion or request of Mates, there is no basis in fact for finding or concluding that those payments were made on behalf of Mates, or by Gerlach as the agent of Mates, or that Mates authorized or ratified them as payments by him. No such inferences or conclusions are warranted by Mates' mere participation in requesting Gerlach to make some payment on an obligation for which no lia-

bility then existed on Mates' part, and his mere presence at the time Gerlach turned over the sack of flour as a payment to plaintiff pursuant to Mates' request. Because at that time there no longer existed any obligation on Mates' part by reason of the note, his situation in respect thereto and in respect to Gerlach, as well as the plaintiff, was the same as that of any other stranger.

Upon plaintiff's right to payment of the note by Mates becoming extinguished on March 1, 1928, by the operation of the statute of limitations, there remained no indebtedness on his part, because of which a part payment by a joint maker could, under the rule (in respect to a payment made before the debt had become barred) which was recognized in jurisdictions following Lord MANSFIELD's decision in *Whitcomb v. Whiting*, 2 Doug. 625, be presumed to have been made for all co-obligors, because the joint maker who paid was, by implication, virtually considered an agent authorized to act for and on behalf of his comakers in respect to that indebtedness. Neither that rule, nor the presumption recognized thereby, is applicable to a co-obligor as to whom the statute had run prior to the payment by a joint maker. As Mr. Justice STORY said in *Bell v. Morrison*, 1 Pet. 351, 368, 7 L. Ed. 174: "When the statute has run against a joint debt, the reasonable presumption is that it is no longer a subsisting debt; and therefore there is no ground on which to raise a virtual agency to pay that which is not admitted to exist." The following discussion in *Goudy v. Gillam*, 6 Rich. (S. C.) 28, 29, is in point:

"In the case now presented, the statute had run out before payment of a part of the debt by one of three joint contractors, and it is insisted, the old debt was revived, with its original obligation on each one of the contractors. . . . The difference of the effect of a payment by one of two or more contractors, made before or after the debt is barred, is manifest. Whilst the legal obligation subsists, a payment

by one, because it is for the benefit of each and the duty of each, may well be regarded as the act of all, and, consequently, as furnishing evidence of a continuing recognition of the original contract. But when the statutory limitation is complete, the legal obligation no longer subsists—the remedy is gone and the liability discharged, as though there never had been any. Nothing short of a new promise to pay, clear, and explicit and unconditional, express, or implied, can impart vitality again. It is, in fact, a new contract, and any act which stops short of an express promise, or which fails to furnish evidence of a state of facts from which the law will raise a new promise, will not suffice. When this payment was made by one of the contracting parties, the others were in noway interested or benefited, there was no legal obligation upon them, hence the implication of authority or approval in no way arises. The law will not imply a promise from such a state of facts."

To the same effect, see *Ellicott v. Nichols,* 7 Gill (Md.), 85, 102.

So, although a payment after the statute has run may be sufficient to raise, in law, a new promise by the debtor who made the payment to pay the debt. (*Engmann v. Estate of John Immel,* 59 Wis. 249, 255, 256, 18 N. W. 182. See also *Marshall v. Holmes,* 68 Wis. 555, 32 N. W. 685; *Lyle v. Esser,* 98 Wis. 234, 240, 73 N. W. 1008), such payment cannot, in the absence of an agency in that debtor to promise or contract on behalf of a former co-obligor, as to whom the debt had become barred, be deemed to result in the creation of a new contractual obligation on the latter's part to pay the barred debt. That distinction was recognized at common law, even in the absence of the protection afforded a joint obligor by such statutes as sec. 330.47, Stats. Thus in *Cross v. Allen,* 141 U. S. 528, 536, 12 Sup. Ct. 67, 70, the court said:

"At common law and in those of the states where the common-law rule prevails, a distinction is made between those cases in which a part payment is made by one of sev-

eral promisors of a note before the statute of limitations has attached and those in which the payment is made after the completion of the bar of the statute; it being held in the former that the debt or demand is kept alive as to all, and in the latter, that it is revived only as to the party making the payment. *Atkins v. Tredgold,* 2 B. & C. 23; *Sigourney v. Drury,* 14 Pick. (Mass.) 387, 391; *Ellicott v. Nichols,* 7 Gill (Md.), 85, and cases cited. The reason of this distinction lies in the principle that, by withdrawing from a joint debtor the protection of the statute, he is subjected to a new liability not created by the original contract of indebtedness."

It follows that the judgment must be reversed as to Mates, and that the complaint be dismissed as to him.

*By the Court.*—Judgment reversed as to the defendant, R. F. Mates, and cause remanded with directions to enter judgment dismissing the complaint against him.