CASE 44—PETITION ORDINARY—JULY 13.

# Phillips vs. Covington and Cincinnati Bridge Company.

APPEAL FROM KENTON CIRCUIT COURT.

1. By the first section of an act, entitled " An act to amend the charter of the Covington and Cincinnati Bridge Company," the capital stock of the company was increased to seven hundred thousand dollars, and by the second section power was conferred on the bridge company to sell, and on the city of Covington to subscribe, for one hundred thousand dollars of the capital stock of the company, and in payment thereof to sell the bonds of the city and levy a tax for the payment of interest on the bonds. *Held* —That the act is not in conflict with the 37th section of the 2d article of the constitution, which provides that no law shall relate to more than one subject, and that shall be expressed in the title.

2. The constitutional prohibition, *supra*, should receive a rational construction, and, looking to the evil intended to be remedied, it should be applied to such acts of the legislature alone as are obviously within its spirit and meaning. None of the provisions of a statute should be regarded as unconstitutional where they all relate, directly or indirectly, to the same subject, have a natural connection, and are not foreign to the subject expressed in its title.

3. A subscriber to the stock of the Covington and Cincinnati bridge company made his subscription payable after four hundred thousand dollars shall have been subscribed. In determining whether this amount had been subscribed, the amount subscribed by the city of Covington, which was unconditional, is to be included, notwithstanding the subsequent payment thereof by bonds of the city at par when their market value was less than par. Stock subscribed by contractors, payable in services, and materials, estimated at their cash value, to be used in the construction of the bridge, must also be included ; as also the subscription of a stockholder, one half of whose stock the company might, at its option, convert into bonds to be issued by it. The unpaid subscriptions of persons who were insolvent, or infants, or married women, at the time of making them, excluded from the computation

CAMBRON & FISK, for appellant, cited *sec. 37, art. 2, Con. of Kentucky.*

KINKEAD & CARLISLE, on same side, cited *City Charter, art.* 1, *sec.* 6 ; 2 *Cranch,* 167 ; 4 *Wheat.,* 686 ; 4 *Pet.,* 168 ; 13 *Ib.,* 587 ; *Ib.,* 122 ; 12 *Wheat.,* 68 ; 2 *Kent,* 298 ; *sec.* 37, *art.* 2, *Con. Ky.*; *art.* 118, *Con. Louisiana* ; 5 *La. An. Rep.,* 92, 95 ; 10 *Ib.,* 722 ; 9 *Ib.,* 329, 350 ; 1 *Selden,* 285 ; 4 *Ib.,* 241 ; 7 *Maryland,* 151 ; 13 *Texas,* 345 ; 24 *Barb.,* 199 ; 24 *Conn.,* 159 ; 6 *Cush.,* 50 ; 2 *Denio,* 403 ; 4 *La. An. Rep.,* 298.

BENTON & NIXON, on same side, cited *Angell & Ames on Cor.*, sec. 146; 6 *Pick.*, 23; *Ib.*, 45; 9 *Ib.*, 187, 196; 10 *Ib.*, 142, 146; 2 *Ib.*, 202; 3 *Mass.*, 443; 6 *Mon.*, 429; *Sess. Acts* 1855–6, *p.* 315; *art.* 2, *sec.* 37, *Con. Ky.*; 7 *Md.*, 151; 7 *Texas*, 184; 4 *Geo.*, 26; 15 *Ill.*, 20; 22 *Barb.*, 634; 18 *Geo.*, 65; 7 *Ind.*, 681; 6 *Ib.*, 31; 6 *Cush.*, 50, 54,

STEVENSON & MYERS, for appellee, cited *Acts to establish Civil Code and to adopt Rev. Stat.*; sec. 6, art. 1, *City Charter.*

MENZIES & PRYOR on same side.

CHIEF JUSTICE SIMPSON DELIVERED THE OPINION OF THE COURT:

This action was brought against the appellant on an instrument of writing which was subscribed by him, and reads as follows, viz:

"We, the undersigned, hereby subscribe and promise to pay to the Covington and Cincinnati bridge company the respective amounts attached to our names, as a subscription for stock in said company, payments to be made at such times and in such amounts as shall be demanded by the directors of said company, provided no demand shall be made until after the sum of four hundred thousand dollars shall have been subscribed, including these of ours."

The defense to the action was, that the sum of four hundred thousand dollars in actual available stock had not been subscribed when the demand upon the defendant was made.

The company having recovered a judgment against the defendant, he has appealed to this court for its reversal.

The principal questions in the case relate to the validity of some of the subscriptions of stock which the jury were permitted by the court below to take into the estimate, in determining what amount of stock had been subscribed before the appellant was called upon for the payment of his subscription.

The city of Covington subscribed stock to the amount of one hundred thousand dollars. That subscription was objected to on the ground that the city had no authority to make it; but the objection was overruled, and the jury were instructed to regard it as a valid subscription.

In examining the validity of the subscription made by the city, we do not deem it necessary to decide whether it had the

Phillips vs. Covington and Cincinnati Bridge Company.

power under its charter to have made such a subscription, inasmuch as we are of the opinion that the power to do it was conferred on it by the act of the legislature of February, 1856, (1 *vol. Session Acts* 1855–6, *p.* 315,) entitled "An act to amend the charter of the Covington and Cincinnati bridge company."

This act, it is argued, is unconstitutional, because, as it is contended, it is in violation of the 37th section of the 2d article of the constitution, which declares that "no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title."

Conceding that this provision of the constitution is not merely directory, but that it prohibits the passage of any law which applies to more than one subject, and renders void so much thereof as does not relate to the subject expressed in the title, still the act in question does not, in our opinion, fall within that class of legislative acts which this constitutional provision was intended to prohibit.

A practice had become prevalent of uniting in the same act of the legislature subjects which had no relation to each other, and which were wholly dissimilar and unconnected. Hence it not unfrequently happened that the title of an act gave no indication whatever of some of the subjects to which its provisions related. And by permitting amendments to be made to a bill, by which distinct and unconnected matters might be introduced into and made a part of it, an improper influence was sometimes brought to aid in its final passage. To remedy this evil the constitutional provision under consideration was adopted. Such a construction should therefore be given to it as is necessary to render it effectual in accomplishing the object for which it was designed. But it should not be so construed as to restrict legislation to such an extent as to render different acts necessary where the whole subject-matter is connected, and may be properly embraced in the same act.

It is not necessary for the accomplishment of the purpose contemplated to go from one extreme to the other, nor would such a course be consistent with the intention of the framers of the constitution. This prohibition should receive a reasonable and not a technical construction; and looking to the evil

intended to be remedied, it should be applied to such acts of the legislature alone as are obviously within its spirit and meaning. None of the provisions of a statute should be regarded as unconstitutional where they all relate directly or indirectly to the same subject, have a natural connection, and are not foreign to the subject expressed in its title.

By the first section of the act under consideration, the capital stock of the company was increased to seven hundred thousand dollars. The second, and only remaining section of the act, is in the following language:

"The said company may sell one hundred thousand dollars of its capital stock to the city of Covington, to be subscribed and paid as may be agreed by said company and said city; and in payment of said one hundred thousand dollars, the said city may sell her bonds to the amount of one hundred thousand dollars, the amount of every bond, and the times and places of the payment of principal and interest, to be fixed by said city; and the city is hereby authorized to levy a tax of ten cents upon every one hundred dollars' worth of taxable property therein in 1856 and in 1857, for the purpose of paying the interest on such bonds."

The only provision in this section of the act, that is involved in the question we are examining, is that which relates to the power conferred on the bridge company to sell, and on the city to subscribe and pay for, one hundred thousand dollars of the capital stock of the company.

It is not denied that this provision, so far as it relates to the bridge company, is consistent with the title of the act; but it is contended, that so far as it relates to the city of Covington, it is entirely foreign to the object therein indicated.

The power to sell stock to the city of Covington necessarily requires that a power should be conferred on the latter to subscribe and pay for it; for without such a power, the power to sell would be nugatory. The subject is the same, although it relates to a transaction to which two corporations are parties, one of whom only is named in the title of the act. If by the act a power had been conferred on the city of Covington to subscribe for the stock of any other corporation but the one

named in the title of the act, then the provision would fall within the constitutional prohibition, and be clearly null and void. But as it is restricted in its operation to matters pertaining to the bridge company, and the provisions of the act, so far as they relate to the city of Covington, are apposite to the purpose which was intended to be effected by its passage, and are sufficiently indicated in its title, it is not liable to this constitutional objection. It was certainly not necessary for the Legislature to pass two separate acts to effect the object it had in view; one to enable the company to sell the stock to the city, and another to enable the city to subscribe and pay for it. The constitutional provision relied upon must receive a rational construction, and not one that would lead to such an unnecessary and absurd result.

It appears that after the stock had been subscribed by the city, and a payment of ten thousand dollars had been made thereon, the company received from the city, in payment of the balance due upon the stock subscribed, its bonds at par, when the market value of the bonds was much less than that at which they were received. On this state of facts, the court was asked to instruct the jury, that in determining whether four hundred thousand dollars of stock had been subscribed, before the defendant was called upon to make payments on his stock, they must estimate the stock of the city by the amount realized thereon, and not by the number of shares subscribed. But as the stock of the city was subscribed upon the same terms that the other unconditional stock was, and the bonds of the city were subsequently received in payment thereof, this subsequent action of the company cannot have the effect attributed to it. The stock as subscribed was valid; it was equal in value to any of the other stock, and when subscribed constituted one fourth part of the amount which was required by the condition annexed to the stock of the defendant. Whether the board of directors had the power to take the bonds of the city in payment of its stock, is a question that does not arise in this case. And if the board, or its president, acted improperly or without authority in so doing, the defendant had a right, by application to a court of equity, to restrain any action on the part of the board that

had a tendency to operate to his private injury as a stockholder in the company. The court did not err, therefore, in refusing to give this instruction.

Stock had been subscribed by the contractors, which some of them were to pay in services, and others in materials to be used in the construction of the bridge. This stock was objected to on the ground that its payment depended upon the continuation of the work, and was, therefore, conditional in its nature, and also on the ground that it was not payable in money.

It appeared in proof, that the materials were to be furnished in payment of this stock, at as cheap a rate as they could have been purchased with money; and that the compensation agreed to be allowed for the services, part of which was to be paid in stock, did not exceed that which was reasonable, and which the company would have had to pay therefor, if the payment had been made altogether in money. Under these circumstances we do not perceive any good reason why such stock should not be regarded as valid. It suited the purposes of the company as well as stock that was payable in money. It operated to save for the company money to the amount thereof, which it would have been compelled to expend had the stock not been taken. The result was precisely the same that it would have been if the stock had been payable in money, and the money, when paid, had been expended for the payment of these services and materials. The arrangement is not prejudicial to the other stockholders, nor does it give any advantage to the stockholders who have the privilege to pay their stock in this manner, inasmuch as they only receive the cash value of their services and materials, and that these services and materials are all indispensably necessary to enable the company to construct the bridge, the construction of which is the sole object of its incorporation.

These services are to be rendered and materials furnished as the work progresses, but this circumstance does not make the stock conditional. All the contracts contemplate a regular continuation of the work until its completion; and the bare possibility, or even the probability of its suspension for the want of means to carry it on, cannot be allowed to have the effect to

convert into conditional stock that stock which was taken in good faith, with a confident expectation by both parties that it would be paid for in full, in pursuance of their agreement, and which, when taken, had no condition annexed to it.

The instruction of the court below, in relation to this stock, was as favorable to the appellant as he had a right to require it to be, and was as follows, viz.:

" The subscriptions of persons making contracts with the appellee for work on and materials furnished for the construction of the bridge, should be computed at their value to the appellee at the times they were made, as compared with the value of subscriptions payable in money."

Under this instruction power was given to the jury to reduce the nominal amount of this stock, if they believed, from the evidence, that it was of less value at the time it was taken, considering the manner in which it was to be paid, than stock payable in money.   The jury were also instructed by the court to exclude from their computation the stock of persons who were insolvent, or were infants, or married women, when the subscriptions were made, unless such subscriptions had been paid.   The instructions to the jury which were given by the court below, were correct, and substantially embraced the whole law of the case.

There is but one other point which we deem necessary to notice.

In the contract between the bridge company and the Buena Vista stone company, the latter is allowed the privilege of converting one half of the stock which it subscribed into eight per cent. bonds of the bridge company, so soon as it may issue any such bonds.   It will be perceived that the execution of this stipulation depends entirely on the bridge company.   It is not bound to issue any bonds of the description mentioned, and, of course, will not do so unless the stock should become of more value than such bonds, or unless the interest of the company should require it to be done.   And besides, if the stock should be of less value than the eight per cent. bonds, the company would have no right to issue the bonds in payment of the stock.   To carry the contract into effect, under such circum-

226 METCALFE'S REPORTS.

stances, would be a fraud upon the other stockholders. The stock was subscribed for unconditionally, and the stipulation in relation to the exchange of part of the stock for the bonds of the company, is contained in a separate agreement between the parties. This stipulation is, therefore, in effect, void and inoperative. It cannot be carried into execution unless the interest of the bridge company would be thereby promoted. It operates, therefore, rather as a privilege to the company than to the subscribers of the stock. But as it cannot be carried into effect without the assent and concurrence of both parties, it is not, properly speaking, a privilege belonging to either. It does not affect the value or the validity of the stock, and was, therefore, properly disregarded by the court below.

Wherefore, the judgment is affirmed.