CASE 40—EQUITY—JUNE 16, 1883.

# Citizens' Gas-Light Company v. Louisville Gas Company.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. Appellee asserts the exclusive right, under an act of the general assembly, to manufacture and sell gas in Louisville. Appellant claims the same right under an act of the general assembly. Appellee's assertion of exclusive right under an unconstitutional act puts appellant's right under a cloud, and prevents it from selling stock and raising means for its purposes. An injunction to restrain appellees from setting up such an exclusive right should be granted.

2. The right to obtain an injunction to prevent appellees from putting appellant's right under a cloud is not destroyed by the fact that appellant has not obtained the consent of the city of Louisville to lay its pipes, &c., as fixed by their charter.

3. That portion of appellee's charter granting to them the exclusive right to manufacture and supply gas to the city of Louisville, is forbidden by the first section of article 13 of the constitution, which provides "that all freemen, when they form a social compact, are equal, and that no man or set of men are entitled to exclusive, separate, public emoluments or privileges from the community, but in consideration of public services."

4. The title of the act to extend the charter of appellee embraces but one subject, and it is constitutional.

BARRETT & BROWN, BEATTIE & WINCHESTER,. BIJUR & DAVIE, AND WM. LINDSAY FOR APPELLANT.

1. The attempt of the general assembly to confer upon appellee the exclusive privilege of erecting and maintaining gas works in the city of Louisville is as clearly a nullity as the attempt to give it the exclusive privilege of selling gas-light to the inhabitants of that city.

2. The conditions in the ordinance giving the consent of the general council to the use of the streets by appellant, are conditions subsequent. These conditions can only be taken advantage of by the city.

3. An injunction is a proper remedy for appellant when appellant is openly asserting the exclusive right to manufacture and sell gas in the city of Louisville.

4. The attempted grant of an exclusive privilege was subject to repeal under the general right of repeal reserved in the revised statutes.

5. The attempted grant of a monopoly was not in consideration of *public services* to be rendered by the appellee, and is therefore unconstitutional and void.

6. The grant to appellant impliedly repealed the supposed exclusive privilege attempted to be granted to appellee. (27 La., 138; Newport v. Taylor, 17 B. M.; 16 B. M., 779; High on Injunctions, sec. 918; Constitution Kentucky, Bill of Rights, sec. 1; 16 Wallace, 57; 45 Ill., 90; 1st Abbott's U. S. Rep., 1; 25 Conn., 19; Bac. Ab., title Monopoly, Div. A; Winchester Building Ass. v. Gordon, 12 Bush, 110; Louisville City R. R. Co. v. Louisville, 8 Bush, 415; 29 Wis., 484; Watts v. Commonwealth, 78 Ky., 332; Session Acts 1867. vol. 1, p. 188; Session Acts 1869, vol. 1, 166; 2 Gray, 27; 1 Johns., 611; 5 *Ib.*, 101; 9 *Ib.*, 507; 27 La., 138; 2 Mason, 31; 2 Otto, 569; 8 *Ib.*, 359; Gibson v. Belcher, 1 Bush, 145; Chiles v. Monroe, 4 Met., 75; 3 *Ib.*, 256; Rev. Stat., vol. 2, p. 121; 11 Peters, 420; High on Injunction, sec. 902.)

GOODLOE & ROBERTS, T. L. BURNETT, I. & J. CALDWELL & WINSTON, AND A. P. HUMPHREY FOR APPELLEE.

1. The charter of the Louisville Gas Company contained in the Acts of January 30, 1867, and 22d January, 1869, is a *contract*, and protected both by the constitution of the United States and that of Kentucky. (Hamilton v. Keith, 5 Bush, 461; Dartmouth College v. Woodward, 4 Wheat., 518; 5 Howard, 145; City of Louisville v. University of Louisville, 15 B. Mon., 632; 2 Met., 598; 3 Wall., 73; 5 Otto, 679; 16 Wall., 36; 3 *Ib.*, 73; 21 *Ib.*, 441; Montesquieu's Sp. Laws, 25; Lou. & P. R. R. Co. v. Lou. City Railway Co., 2 Duv., 175; 11 La. Ann., 255; 10 *Ib.*, 741; 27 *Ib.*, 138, 2 Gray, 1; 29 Wis., 454; 6 *Ib.*, 546; 22 Mo., 110; Johnson v. Commonwealth, 7 Dana, 338; 25 Md., 1; 6 Wis., 546.)

2. The act of January 30, 1867, extending the charter of appellee, contains but one subject. (36 Barb., 136; 19 N. Y., 116; 12 Iowa, 1; 50 N. Y., 290.)

3. The proceeding taken by appellant is not the proper one to try the constitutionality of appellee's charter. To be entitled to the remedy by injunction, appellant's title must be clear. (Ross v. Young, 5 Snead (Tenn.), 627; 44 Miss., 654; 54 Ill., 523.)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

In 1838 the legislature chartered the Louisville Gas Company, with the exclusive privilege of manufacturing and furnishing gas to the city and citizens of Louisville until the 1st day of January, 1869, at which date the charter was to expire.

On the 30th of January, 1867, in anticipation of the expiration of this charter, the legislature passed an act, entitled "An act to extend the charter of the Louisville Gas Company," which provided that it should take effect from the 1st day of January, 1869, and continue twenty years. This last act was in effect, as we have decided in the case of Cain·v. Commonwealth, 14th Bush, 535, the creation of a new charter, the powers under which are to be ascertained by reference to this act, and not by reference to the act of 1838. In this last act of 1867 there is no grant of an exclusive privilege to manufacture and sell gas in the city of Louisville.

On the 22d of January, 1869, after the charter of 1867 had gone into effect, and after its acceptance by the stockholders of the old company, the company applied to and obtained from the legislature an amendment to the act of 1867, by which the company was given the *exclusive* right to manufacture and furnish gas to the city and to the citizens of Louisville during the life of the charter.

On the 21st of March, 1872, the legislature chartered the "Citizens' Gas-light Company," with power to manufacture and furnish gas to the city and citizens for the period of fifty years. The 3d section of that act reads:

"Said company shall have power and authority, with the consent of the general council of said city, to open the ground in any highway, street, lane, alley, park, or other public place within the limits aforesaid, and lay and repair therein their pipes for conducting gas; said company restoring the same to as good condition as before, within a reasonable time thereafter; said company being required in so doing not to injure any gas or water-pipe, or connection or sewer laid therein, and said corporation being liable to the

city of Louisville for any damage it may have to pay for its negligence in so laying, repairing, or restoring as aforesaid, and such power and authority is subject to such reasonable regulations as the mayor and city council may make for the protection of life, property, and health of citizens."

Appellant instituted this action in equity, alleging the facts stated, and that the claim of appellee to the *exclusive* right to manufacture and supply gas in the city of Louisville cast a cloud over appellant's title to the franchise, and prevented it from selling its stock to raise the sum of money necessary to the enjoyment of its franchise, and preliminary to its beginning work under its charter. Appellant prays that the cloud on its title may be removed; that it be adjudged that appellee has no such *exclusive* right as asserted, and that an injunction be granted restraining appellee from asserting such exclusive claim.

On hearing, the court dismissed appellant's petition, with cost, from which judgment this appeal is taken.

The first point made by appellee is, that this proceeding in equity for an injunction is not the proper remedy by which to determine whether appellee has the exclusive right to the manufacture and the supplying of gas to and in the city.

If the exclusive right insisted upon by appellee is without warrant of law, is unconstitutional and void, and the assertion of that right prevents appellant from selling its stock, and raising the large amount of money necessary to entering upon the enjoyment of its franchise, the whole of the charter rights of appellant are destroyed by the assertion of an unfounded claim on the part of appellee. In such case the remedy adopted is peculiarly appropriate, as has been expressly adjudged in the similar case of Crescent City Gas-

light Co. v. New Orleans Gas-light Co., 27 La. Ann., 142. As to whether such claim of exclusive privilege is unfounded, because unconstitutional, we will inquire into hereafter. It is enough for jurisdiction that the claim is so alleged.

Secondly, it is insisted that as the conditions of the consent of the city council, manifested by ordinance exhibited with the petition, are conditions precedent to the exercise of appellant's franchise, and that as they have not been complied with, appellant has no right to entertain its action. Those conditions are contained in the ninth and tenth sections of the ordinance, and are as follows:

"*Ninth.* That said company shall proceed as rapidly as practicable to establish its works, and lay down its pipes and mains, after the passage of this ordinance, provided the said company shall have erected its gas-works, laid down its mains, and be prepared to supply the citizens with gas, within two years after the approval of this ordinance; and this ordinance, and all rights and privileges granted thereunder, shall be null and void should said company fail to keep or perform each and every provision of this ordinance in each and every particular."

"*Tenth.* That for the faithful performance of all the provisions of this ordinance, the Citizens' Gas-light Company shall execute a bond, with good security, to the amount of $75,000, to be approved by the mayor and general council. And that within two years there shall be an investment made by said company in works and mains equal in value to the sum of $75,000."

Subsequent to this ordinance, the city council, by resolution, extended the time for the performance of these conditions two years longer.

In the first place, the right of appellant to have the cloud removed from its franchise was precedent to, and independent of, any consent on the part of the city to the opening of the streets to lay its pipes and mains. On the passage of the charter and its acceptance by appellant, it became seized of a property right in the franchise, for the protection of which it had the right to invoke the aid of a court of equity. As to whether appellant could or could not obtain the consent of the city council was a matter with which appellee had nothing to do. So long as the consent might be obtained, it did not lay with appellee to claim that the consent had not been obtained, particularly as the claim of exclusive right on the part of appellee might have been the cause of preventing the consent.

Secondly, the franchise of appellant was valuable without the consent of the city council to the tearing up of streets to lay down pipes and mains, as the business of the corporation might have been carried on without disturbing the soil of the streets.

Thirdly, all the conditions contained in the ordinance, except it may be that of giving bond, are conditions subsequent to the consent of the city council; and as to the matter of the bond, that is an affair between the city and appellants, with which appellee has nothing to do.

Fourthly, the charter of appellant does not require that the consent of the city shall be obtained by ordinance, and although such consent was so obtained, and although it may be conceded that an ordinance cannot be continued in force after its expiration by resolution, yet, as the city council had the right to waive the forfeiture for non-compliance therewith, the resolution is an express and unimpeachable waiver. Even if it be conceded, which is not, that appellant has no

right to tear up the streets, and lay down its pipes and mains, without the consent of the city council obtained previous to the assertion of claim in opposition to the exclusive right insisted upon by appellee, it is clear that appellee has no such right to tear up the streets and lay down therein its pipes and mains, even with the consent of the city council, for the seventh section of its charter granted in 1867, and which gives this right, is expressly repealed by the third section of the act of 1869, amendatory thereof. The language of the third section of the act of 1869, repealing the seventh section of the act of 1867, is plain, emphatic, and unequivocal, and leaves no room for speculation as to the intention of the legislature in the use of such language. The repeal of this section of appellee's charter does not affect the rights of appellant, because he must recover on his own title; but it illustrates the fact that the consent of the council, under legislative grant, to the tearing up of the streets to lay down mains and pipes, has not been considered essential to the supply of gas to the city and to the citizens of Louisville, since appellee has continued operation without such authority since the 22d of January, 1869.

Appellant objects that the charter of appellee, granted by the act of 1867, entitled "An act to *extend* the charter of the Louisville Gas Company," is unconstitutional and void, because it fails to comply with the requirements of section 37 of article 2 of the state constitution, which provides that "no law of the general assembly shall relate to more than one subject, and that subject shall be expressed in the title."

If this act had been an act entitled "an act to *incorporate*," instead of to "*extend*," the Louisville Gas Company, it is probable that no point would have been made, in view of the decisions in this state. The general subject embraced

in this act is the manufacture and supply of gas to the city and citizens of Louisville, and that subject is as well indicated by the term "extend" as it would be by the word "incorporate," for while the act of 1867 creates a new company under the old name, the terms of the two charters are substantially the same, and all the terms of each have a natural relation to, and connection with the same subject, that is, the manufacture and supply of gas. The act is not unconstitutional on this ground. (Louisville & Oldham Turnpike Road Company v. Ballard, 2 Met., 168; Phillips v. The Covington Bridge Co., 2 Met., 222; McReynolds v. Smallhouse, 8 Bush, 453.)

The next question presented by appellant is, whether that portion of the charter of appellee granting the *exclusive* right to manufacture and supply gas is forbidden by the first section of the 13th article of the state constitution, which is as follows:

"That all freemen, when they form a social compact, are equal, and that no man or set of men are entitled to exclusive, separate, public emoluments or privileges from the community, but in consideration of public services."

We are of the opinion, both on principle and authority, that such legislation is forbidden by the provision of the constitution quoted.

The authority for this conclusion seems to be ample in this state. Gordon, &c., v. Winchester Building Association, 12 Bush, is in point. At the time of the passage of the charter of that association, the general law forbade, under a penalty of the forfeiture of all the interest, the charging of interest at a greater rate than ten per centum per annum. The charter authorized the association to charge more than ten per centum, and this court declared the act

unconstitutional, because it granted to the association an exclusive privilege without the consideration of public services on the part of the association. The case under consideration is more certainly within the constitutional inhibition, because the terms of the charter expressly excludes any other persons or corporation from the enjoyment of the privileges granted to appellee. In the Gordon case it might well be said that the privilege was an exceptional or special privilege forbidden only by the general law, while here it is expressly declared to be *exclusive*. But whether the privilege is exceptional, special, or exclusive, it appears to be equally denounced by the constitution, as decided in the case of Smith v. Warden, MS. opinion of this court, January 20th, 1883. In that case it was held that a special act giving a clerk a longer time within which to collect his fees than was allowed by the general law to other clerks was unconstitutional. It is true the opinion is not, in terms, based upon this provision of the constitution, but it is clearly not maintainable upon any other ground, unless it be that the special act was not in the exercise of a legislative authority, and therefore unconstitutional, because beyond the limits of that department of the government, and consequently void as an arbitrary exercise of power. Whether that case be founded upon the one or the other of these grounds, is immaterial, as both reasons exist in the case being considered, for declaring that portion of the act unconstitutional which gives the *exclusive* privilege.

In the case of The Norwich Gas-light Co. v. The Norwich City Gas Co., 25 Connecticut, 1, an exclusive right of this kind, under legislative grant for fifteen years, was claimed and denied, the court holding that whether it was within the provisions of the bill of rights, which provides

that "no man or set of men are entitled to exclusive pub-
lic emoluments or privileges from the community," the grant
was clearly a monopoly, and as such contrary to the whole
theory of free governments, and therefore unconstitutional
and void.

Appellee contends that, although the grant of the exclu-
sive privilege may come within the constitutional inhibition,
it is saved by reason of the fact that it performs a public
service by the requirement to erect gas-posts at specified
intervals for lighting the streets, and for which the company
are to receive a specified compensation. This is no public
service within the meaning of the constitution. This char-
ter in a like manner regulates the price of gas to be supplied
to individual consumers, and reserves, as in the Norwich
gas case, the right of individuals to manufacture gas for
private consumption on their own premises; and in that
case it is said:

" But it is no part of the duty of the government to pro-
vide the community with lights in their dwellings, any more
than it is to provide them with dwellings themselves, or any
of the necessaries or luxuries which may be deemed impor-
tant to the comfort or convenience of the community."

It may be, with equal propriety, said that there is no more
duty on the government to supply lights on the streets, by
gas or otherwise, than to furnish such lights for the conven-
ience of the public on the public highways of the state;
nor is it any more the duty of the government to furnish
such lights than to furnish telephonic, fire-alarm, or tele-
graphic communication to the citizens. All these matters
are of municipal control, under the supervision of the local
government, and not in any sense a duty devolving upon the
state or general government.

Citizens' Gas-Light Company v. Louisville Gas Company.

It is not questioned that the legislature may grant a franchise to a corporation or a right to an individual, upon the faith of which rights and interests may be acquired, which may ripen into an inviolable contract; but in all such cases there must antecedently exist in the legislative department the constitutional power to make such grant. If the power does not exist, the grant is a nullity, and no rights can be acquired on the faith of it. The grant is void *ab initio*, and is of no more effect than if such legislation had not been attempted. Charter rights in such cases stand exactly on the same basis as the rights of natural persons. The creation of a corporation by legislative act is the creation of an artificial being which, when brought into existence, must be treated, in reference to rights and privileges, as a natural person.

The cases relied upon by counsel for appellee in support of the doctrine that exclusive privileges or monopolies may be granted to the exclusion of subsequent control by the legislature, are all from states where there is no such constitutional provisions as that quoted from our constitution. For instance, the Slaughter-house cases, in 16 Wall., from Louisiana, where a monopoly was sustained by a majority decision of the supreme court. In the constitution of Louisiana there is no such provision as is found in our constitution, but there is a provision that an exclusive privilege or monopoly shall not be granted for a longer period than twenty years. So in the cases cited from Wisconsin, there is no provision. And in reference to the cases from Ohio, relied upon by counsel for appellee, there is not only no inhibition in the constitution against such legislation, but, on the contrary, there is a constitutional provision which,

by implication, authorizes the granting of exclusive privileges. The language of that constitution is, that "no special privileges or immunities shall ever be granted that may not be altered, revoked, or repealed by the legislature."

The case of the Louisville & P. R. R. Co. v. The Louisville City Railway Co., 2 Duvall, 175, is not in point: first, because the question as to whether another railroad, as distinguished from a railway, could be run under legislative grant on streets over which the railroad had been granted the exclusive right to construct its road, was not presented; and second, because the grant to the railroad was for the benefit of the blind asylum, and was the exercise of a governmental function, and therefore supported by the consideration of public services.

It is insisted that this legislation is not more within the constitutional inhibition than exclusive grants for ferries, bridges, and turnpikes, and it is sought to justify it upon the same principle. That kind of legislation does not sanction this. It is essentially different in principle. The granting of ferry privileges, the authority to build bridges, and to make turnpikes, is the exercise of a governmental function, and usually requires the exercise of the power of eminent domain, and are granted in consideration of certain services to be performed for the benefit of the public. Such means of intercommunication are necessary in order that the citizen may perform his duty to the government and to facilitate commerce. The existence of this necessity, and the existence of the fact that ordinarily these things cannot be done without the exercise of the right of eminent domain, renders it the duty of the government to make the grant, and in doing so it may attach such conditions to the grant as it may deem proper; but in all such cases there is

a public service or duty to be performed by the grantee. He furnishes the facilities for communication which existing necessity made it the duty of the government to do, and is, to that extent, acting for the government.

It is upon the same idea of the exercise of a governmental function, and the performance of a service to the public, that all the lottery grants in this state have been sustained. In every instance where such grants have passed under review in the courts, and have been approved, they have been created for the ostensible purpose of establishing schools, libraries, or wharves for the public convenience. All these things, when carried out, are public services, and result in the performance of rights and duties which devolve upon the government. The furnishing of educational facilities, as furnishing means of communication by which the citizen may perform his duties to the state, is the exercise of governmental functions and duties which may properly be delegated to any person or corporation to be performed for the government, and upon such conditions as the government may prescribe. It is upon this principle that the grant to the Green and Barren River Navigation Company, in Smallhouse v. McReynolds, 8 Bush, was sustained. The company performed a public service by keeping the public works on the rivers in repair, and thus furnishing that facility for commerce which it was the right and the duty of the state to do.

The theory of all free governments, whether under a written constitution or not, is equal rights, equal privileges, and equal capacities to every citizen in the acquisition of property, and in the preservation of life, liberty, and property. This legislation, granting the exclusive privilege, violates that spirit as well as the letter of the constitution,

and the construction contended for by appellee, when carried to its logical and legitimate result, would cause incalculable harm.

If this section of the constitution does not apply to this class of legislation, there is nothing in the letter of the constitution to prevent the legislature from creating any character of monopoly for the agrandizement of a private individual or corporation. Suppose a general law should be passed forbidding the sale in the state of any given commodity, and an act should be subsequently passed authorizing a particular person or corporation, for his or its personal good, to trade in this commodity, or, in the act itself, the right should be made exclusive in terms. Such a grant would certainly be void, and, we think, under the express letter of the constitution; but if not void for that reason, it would be void because an arbitrary and tyrannical act not within the scope of legislative authority.

It is not true that the courts cannot declare an act of the legislature unconstitutional or void, unless expressly forbidden by the letter of the constitution. The constitution divides the government into three departments, legislative, executive, and judicial, and provides that neither of these departments shall exercise any power properly belonging to either of the others. The constitution does not undertake to define what the powers or duties of these several departments are, but leaves them to be determined by the maxims of Magna Charta and the common law; so that, whatever act of the legislative department (which we are alone considering) that is not so approved is outside of the pale of legislation and absolutely void. For instance, the legislature cannot authorize the property of one individual to be taken and transferred to another; it cannot make one an

arbiter in his own case, nor can it, under the guise of taxation, confiscate the property of the citizen. Not because any of these things are expressly forbidden in the constitution, but because it is outside of the delegated authority, which is only legislative, and they are, therefore, arbitrary and despotic, belonging to no department of any free government. It appears to us that the act relied upon, giving the exclusive privilege, is likewise outside the limits of legislation, and, for that reason, void.

Whether that portion of the act of 1869, giving to the Louisville Gas Company an exclusive right to manufacture and supply gas to the city and citizens of Louisville for twenty years, is unconstitutional, because in violation of the first section of the thirteenth article of the constitution, or because beyond the authority of legislation as recognized at common law, it is insisted, and we think upon good ground, that the portion of the act of 1869 granting the exclusive right is repealed by the charter of 1872 granted to appellants.

The eighth section of chapter 68, General Statutes, is as follows:

" All charters and grants of or to corporations, or amendments thereof, enacted or granted since the 14th of February, 1856, and all other statutes, shall be subject to amendments or repeal, at the will of the legislature, unless a contrary intent be therein plainly expressed: *Provided*, That whilst privileges and franchises so granted may be changed or repealed, no amendment or repeal shall impair other rights previously vested."

The amendment of 1869 appears to have been passed for no other purpose than that of giving to appellee the exclusive right claimed, since it imposed no new duties sufficient,

as a consideration, to support the grant.   The only differ-
ence between the acts of 1867 and of 1869 is, that under the
act of 1867 the company was bound to extend its main
pipes when the public and private lights would pay eight per
centum profit, while the act of 1869 requires only a profit
of seven per centum; and while, in the act of 1867, the
company is required to supply lights on the streets at actual
cost of manufacture, the act of 1869, in addition, provides
that each of such lights shall not exceed the price of thir-
ty-five dollars.   As already stated, the act of 1867 had been
accepted, and was being acted under, at the time of the
amendment of 1869, so that there appears to be nothing to
prevent the exercise of the right of repeal reserved to the
legislature by the act of 1856, unless it is the last section of
the act of 1869, which provides: "That no alteration or
amendment to the charter of the gas company shall be
made without the concurrence of the city council and the
directors of the gas company."   There is nothing else in
the act of 1867 or of 1869 "plainly expressing," or even ex-
pressing by implication, the intention to make the franchise
irrevocable within the limitations of the act of 1856.   This
section was clearly not intended to be a limitation upon the
power of legislative repeal, but was intended to regulate the
respective rights of the city and the gas company, so that
neither, without the consent of the other, could call upon
the legislature to exercise its right of alteration or repeal.
The grant of the "exclusive" privilege for twenty years to
manufacture and supply gas does not express or imply a re-
straint upon the legislative power of repeal or alteration any
more than the terms of the charter of 1867, which limits
the life of the company to twenty years.   The inviolability
of charters rests upon the ground of executed contracts sup-

ported by a valuable consideration.    Here there was no consideration for the grant of an exclusive privilege, since the Louisville Gas Company had already accepted the charter binding it to the performance of the duties imposed by the amendment of 1869.    The act of 1872, incorporating appellant, being in conflict with the grant of an exclusive privilege to appellee, necessarily repeals that portion of appellee's charter, but in no way interferes with its rights in other respects.

There is another reason, outside of the constitutional question, why the exclusive right asserted by appellee should not be recognized.    If, as insisted by counsel for appellee, the act of 1867 is the grant of a new charter to the old corporation created in 1838, that corporation has the exclusive right for fifty years to manufacture and supply gas to the city and citizens of Louisville.    Such a grant of a monopoly was not recognized at common law.    It is a restraint upon trade, destroying competition essential to the welfare of the public, as in other occupations and business, and incompatible with the growing interests and necessities of commercial centers.

We may further say, that if it be admitted that the supplying of gas on the streets, for which the company receives compensation, is the rendering of a public service which would entitle appellee to the exclusive privilege of manufacturing gas, there is certainly no constitutional or common law reason why the citizens of Louisville should be restrained of their right to purchase that commodity where it can be most cheaply obtained, as that right unquestionably exists in all other branches of trade and commerce.

Judgment reversed, and cause remanded, with directions to issue a perpetual injunction restraining appellee from

claiming and exercising the exclusive right to manufacture and supply gas to the city and citizens of Louisville.

Judges LEWIS and PRYOR delivered the following separate opinion :

Without entering into the discussion as to the meaning of *exclusive separate public emoluments and privileges* contained in section one of the bill of rights, it seems to us that the question of *exclusive rights* can have but little, if any, application to a contract made between the state and the citizen, by which certain privileges are conferred by reason of an adequate consideration, of which the legislature is to be the sole judge, moving from the citizen in undertaking to discharge a public duty or render a public service. In such a case the consideration rendered or to be rendered the public will uphold the grant. It is a mere question of contract rights, and both the state and the citizen must abide by its terms, as much so as if it had been entered into between individuals. The case of the Norwich Gas Company is based on the idea that the state is not compelled to furnish gas to the city, neither is it compelled to improve a particular highway, but when it undertakes to do so, and contracts with the citizen to perform the work, it becomes a binding obligation on both parties. The municipality of the city of Louisville being a part of the state government, the necessity for gas-lights upon its streets and in its public buildings is almost as essential as the streets that are lighted by it. It is a public necessity, and when a contract is made to supply this public necessity with gas for a limited and reasonable period, and that does not by its terms create what is termed a monopoly at the common law, the contract is binding. We concur in the conclusion reached that the last charter of

the appellee is within the operation of the act of 1856, but cannot adjudge that the grant for a limited period of an exclusive privilege to the citizen or corporation in considera‑ tion of such services as were to be rendered the *public* in this case, is in violation of section one of the bill of rights. Nor do we think the *cases* in this state cited by our associates, where the grant was a mere gratuity, or was held invalid in the one case at least, by reason of its being *exceptional* legislation, sustain the views presented in the principal opinion.